UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HASAN ALI ABDUR-RAQIYB,

                                        Plaintiff,

                                                                                     <u>DECISION AND ORDER</u>

                                                                                     04-CV-6118L

            v.

ERIE COUNTY MEDICAL CENTER, et al.,

                                          Defendants.
_____

      Plaintiff, Hasan Ali Abdur-Raqiyb, appearing *pro se*, commenced this action pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the New York State Department of Correctional Services ("DOCS") alleges that defendants have violated his rights under the United States Constitution. Specifically, plaintiff alleges that in 2003, while he was incarcerated at Groveland Correctional Facility ("Groveland"), he was taken for treatment of certain ailments to defendants Wyoming County Community Hospital ("WCCH") and Erie County Medical Center ("ECMC"). During some of that time, he was under the care of defendant Pamela Reed, M.D.[1]

      Plaintiff alleges that during this period, he was administered an overdose of morphine. He also alleges that he was injected with certain drugs and substances derived from pork and shellfish

---

[1] Plaintiff's claims against a fourth defendant, Twin City Ambulance Services, were dismissed by the Court on March 22, 2006. Dkt. #94.

products, in contravention of his Islamic religious beliefs. Plaintiff contends that these actions violated his rights under the First and Eighth Amendments. He seeks $10.5 million in compensatory and punitive damages.

Defendants have moved for summary judgment. For the reasons that follow, defendants' motions are granted.

## DISCUSSION

**I. Eighth Amendment Claim**

**A. General Principles**

To show that prison medical treatment was so inadequate as to amount to "cruel or unusual punishment" prohibited by the Eighth Amendment, plaintiff must prove that defendants' actions or omissions amounted to "deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The Second Circuit has stated that a medical need is "serious" for constitutional purposes if it presents " 'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong*, 143 F.3d 698, 702 ($2^d$ Cir. 1998) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 ($2^d$ Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995)). *See also Harrison v. Barkley*, 219 F.3d 132, 136-137 ($2^d$ Cir. 2000) ("A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain'") (quoting *Chance*, 143 F.3d at 702).

Among the relevant factors for determining whether a serious medical need exists are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance*, 143 F.3d at 702 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Tech., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)).

As to the "deliberate indifference" component, the Supreme Court explained in *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991), that this standard includes both an objective and a subjective component. With respect to the objective aspect, the court must ask whether there has been a sufficiently serious deprivation of the prisoner's constitutional rights. With respect to the subjective element, the court must consider whether the deprivation was brought about by defendants in wanton disregard of those rights. *Id.* To establish deliberate indifference, therefore, plaintiff must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain. *See id.* at 299; *DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991); *Ross v. Kelly*, 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir.), *cert. denied*, 506 U.S. 1040 (1992).

The Court in *Estelle* also cautioned that mere negligence is not actionable. "A [prisoner's] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Rather, the plaintiff must allege conduct that is "repugnant to the conscience of mankind," *id.* at 102, or "incompatible with the evolving standards of decency that mark the progress of a maturing

society," *id.* at 105-06. It is clear, then, that allegations of malpractice alone do not state a constitutional claim. *Id.* at 106 n. 14; *Chance*, 143 F.3d at 703-04; *Ross*, 784 F.Supp. at 44.

Likewise, an inmate's "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703; *see also Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) ("The courts will not intervene upon allegations of mere negligence, mistake or difference of opinion").

**B. Application to this Case**

Applying these principles to the case at bar, I find that defendants are entitled to summary judgment. At most, plaintiff's allegations indicate that defendants were negligent. That does not give rise to an Eighth Amendment claim.

The gist of plaintiff's Eighth Amendment claim, which appears to be asserted only against WCCH, is that when plaintiff was transported by ambulance from WCCH to ECMC, WCCH staff failed to adequately inform ECMC what drugs (specifically morphine) had been administered to plaintiff, and in what amounts, with the result that ECMC's administration of additional morphine resulted in an overdose. *See*, *e.g.*, Dkt. #123 at 4 (alleging that staff at "WCCH ... failed to communicate to ECMC emergency room medical staff all of the drugs they authorized to be administered to him by the ambulance technicians ..."); Plaintiff's Deposition Transcript ("Tr."), Christie Decl. (Dkt. #99) Ex. A at 46 (stating that plaintiff's claim against Dr. Reed, who treated him

at ECMC, was not based on the "treatment of the morphine," but on the administration of the pork-derived drug Heparin and a CT scan, to which he objected on religious grounds).

Assuming the truth of plaintiff's allegations, he cannot show that defendants acted with the requisite culpable state of mind to establish the subjective prong of an Eighth Amendment claim.[2] Even if defendants did fail to communicate with one another about the medications that plaintiff had been given, or did give him an overdose of morphine, there is no evidence that they did so with the requisite intent to cause him pain or physical harm, or with "culpable recklessness, *i.e.*, an act or a failure to act ... that evinces a conscious disregard of a substantial risk of serious harm." *Hernandez v. Keane*, 341 F.3d 137, 144 (2$^d$ Cir. 2003) (quoting *Chance*, 143 F.3d at 703) (additional internal quotation marks omitted). *See*, *e.g.*, *Toguchi v. Chung*, 391 F.3d 1051, 1059 (9th Cir. 2004) (allegation that physician disregarded serious and known risks of combining three particular drugs was an "accusation ... of negligence as opposed to deliberate indifference"); *Cazares-Montes v. Kern County Sheriff's Dep't*, No. 1:06-cv-00031, 2007 WL 2156168, at *3 (E.D.Cal. July 25, 2007) ("Plaintiff's claim that he was overdosed with prescription medication due to staff negligence fails to state a claim under section 1983 for violation of plaintiff's constitutional rights"); *Staskicky v. South Woods State Prison*, No. CIV. 03-369, 2007 WL 1723467, at *9 (D.N.J. June 12, 2007) ("even if the Court were to assume Plaintiff's allegation that Dr. Kaldany 'doubled' his medication, that

---

[2]All defendants also deny that plaintiff was given an overdose of morphine. There is a document in the record signed by a registered nurse, indicating that plaintiff was excused from certain activities "because of drug overdosed [sic]." Dkt. #28 at 10. Plaintiff also alleges that on one occasion when he was returned from ECMC to Groveland, the nurse on duty at Groveland had another inmate keep plaintiff on his feet and walking because he was "drugged up" and should not be allowed to fall asleep. Tr. at 33. Whether plaintiff was in fact given an overdose of morphine is immaterial, however, since even if he was, defendants are entitled to summary judgment, for the reasons stated in the body of this Decision and Order.

allegation does not rise to more than negligence, and as held by the United States Supreme Court, a doctor's negligence is not an Eighth Amendment violation") (citing *Estelle*, 429 U.S. at 106).

**II. First Amendment Claim**

Plaintiff's claim under the First Amendment is based on his allegations that while at ECMC, he was administered the drugs Heparin and Lovenox, both of which are pork-derived, and that he was given a CT scan, in which a shellfish-derived dye was injected into his bloodstream. Plaintiff alleges that he was not informed in advance of the nature of the substances involved, and that these actions violated his Muslim beliefs.

Plaintiff testified, however, that "in a case of life and death situations the rules change," and that in emergencies Islam permits the administration of otherwise forbidden substances. Tr. at 101-02, 129, 161. Plaintiff does not deny that at the time in question, he had been complaining of chest pains, nor has he refuted defendants' assertions that he was given these tests and drugs to rule out or avoid a possible heart attack. *See* Reed Decl., Dkt. #100, ¶¶ 3-7.

Under the circumstances here, defendants could have exposed themselves to liability had they *not* administered the tests and medications in question. I see no basis whatsoever for a § 1983 claim in this case.

Defendants would be entitled to summary judgment on the ground of qualified immunity in any event. Qualified immunity shields public officials "from civil damages liability insofar as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known,' *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), or insofar as 'it [is]

objectively reasonable for them to believe that their acts d[o] not violate those rights,'" *Velardi v. Walsh*, 40 F.3d 569, 573 (2$^d$ Cir. 1994)." *Simms v. Village of Albion*, 115 F.3d 1098, 1106 (2$^d$ Cir. 1997); accord *Brown v. City of Oneonta*, 106 F.3d 1125, 1130-31 (2$^d$ Cir. 1997).

Although plaintiff contends that he told ECMC staff upon his arrival that he was a Muslim and did not want to be given any pork, there is no evidence that defendants should have known that his wishes in that regard extended beyond food to the medications and CT scan dye in question. Given the potential seriousness of his condition, defendants could not reasonably have been expected to think that their actions might have violated plaintiff's First Amendment rights. Plaintiff himself testified that he did not realize until afterwards that the substances in question were derived from pork or shellfish, Tr. at 46, and the Court is aware of no case law that had clearly established at the time of the relevant events that the administration of the substances at issue under the circumstances that existed here could give rise to a First Amendment claim.

### III. Other Matters

The Court's decision that defendants are entitled to summary judgment, as explained above, renders it unnecessary to consider the other flaws in plaintiff's action, but there are several that I note. First, WCCH and ECMC do not appear to be proper defendants here, since there is no evidence that any of the actions that occurred at either hospital which give rise to plaintiff's claims took place pursuant to any policy or custom of Wyoming or Erie County. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690-94 (1978); *see also Jeffes v. Barnes*, 208 F.3d 49, 57 (2$^d$ Cir. 2000) (noting that a municipality "cannot properly be held liable ... unless the injury was inflicted by [its]

lawmakers or by those whose edicts or acts may fairly be said to represent official policy") (internal quotation marks omitted), *cert. denied*, 531 U.S. 813 (2000); *Brown v. Nassau County*, No. 05 CV 872, 2005 WL 1124535, at *3 (E.D.N.Y. May 9, 2005) (dismissing claim against county medical center where complaint did not allege underlying municipal policy or custom which deprived the plaintiff of a constitutional right).

Plaintiff has also failed to exhaust his administrative remedies as required by the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). The PLRA provides in part that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.*

Although plaintiff contends that "[t]his is not a prison action, and therefore, [he] do[es]n't believe there are any requirements for exhaustion of administrative remedies in this type of action," Dkt. #1 at 10, the Second Circuit in *Ruggiero v. County of Orange*, 467 F.3d 170 (2$^d$ Cir. 2006), rejected an argument by the inmate plaintiff–who had asserted § 1983 claims arising out of events that happened at Willard Drug Treatment Campus, a DOCS facility, where he was being held for violating his parole–that the PLRA exhaustion requirement did not apply to him because he was not a prisoner in "any jail, prison, or other correctional facility." The court noted that other courts "have read the phrase 'any jail, prison, or other correctional facility' in § 1997e expansively," *id.* at 174 (citations omitted), and stated that "[b]y referring to 'prisoners,' Congress placed a constraint on suits filed by all litigants who could be characterized as prisoners, regardless of the type of facility in which they are imprisoned." *Id.* at 175.

In the case at bar, plaintiff's claims arise out of events at non-DOCS facilities, but they clearly occurred in the context of his confinement, and he was without question a "prisoner" at the time of those events, for purposes of the PLRA. I therefore am not persuaded by plaintiff's assertion that his claims are not subject to the PLRA's exhaustion requirement.

Plaintiff's claims concerning the alleged violation of his Islamic beliefs also fail to meet the "physical injury" requirement of the PLRA. *Jones v. H.H.C. Inc.*, No. 00Civ.6512, 2003 WL 1960045, at *5 (S.D.N.Y. Apr. 8, 2003). The PLRA requires that an inmate seeking to recover anything other than nominal damages establish that he has suffered a "physical injury." *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner ... for mental or emotional injury suffered while in custody without a prior showing of physical injury"). "Courts have strictly construed this requirement, barring claims by prisoners who demonstrate solely emotional or mental injury and barring physical injury claims where the injury alleged is de minimis." *Jones v. H.H.C. Inc.*, No. 00Civ.6512, 2003 WL 1960045, at *5 (S.D.N.Y. Apr. 8, 2003) (Muslim inmate's claim that he suffered psychological damage, and speculation that "the porcine Heparin elevated his blood pressure," even if established, were "clearly insufficient to meet the 'physical injury' threshold").

Finally, I note that in his papers in opposition to defendants' motions, plaintiff attempts, for the first time, to assert claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq.* Plaintiff may not, however, assert a claim for the first time in his papers opposing defendants' motion for summary judgment. *Ribis v. Mike Barnard Chevrolet-Cadillac, Inc.*, 468 F.Supp.2d 489, 495 (W.D.N.Y. 2007). *See also Speer v. Rand McNally & Co.*, 123 F.3d 658, 665 (7th Cir. 1997) ("A plaintiff may not amend his complaint through

arguments in his brief in opposition to a motion for summary judgment") (citation omitted); *accord Murphy v. Board of Educ. of Rochester City School Dist.*, 273 F.Supp.2d 292, 326 (W.D.N.Y. 2003), *aff'd*, 106 Fed.Appx. 746 (2d Cir. 2004).

Such a claim would fail in any event, because plaintiff's allegations that he was administered certain drugs or a dye that he *afterwards* learned contained pork- or shellfish-derived products fail to show that defendants' actions "impose[d] a substantial burden on [his] religious exercise ... ." 42 U.S.C. § 2000cc(a)(1). *See Smith v. Allen*, 502 F.3d 1255, 1277 (11th Cir. 2007) ("to constitute a substantial burden under RLUIPA, the governmental action must significantly hamper one's religious practice"); *Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007) ("For the purposes of RLUIPA, a substantial burden exists where:  1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs").

## CONCLUSION

The motions for summary judgment by defendants Pamela Diane Reed (Dkt. #98), Wyoming County Community Hospital (Dkt. #107), and Erie County Medical Center (Dkt. #117) are granted, and the complaint is dismissed.

Plaintiff's motion for an extension of time to file a response to defendants' motions (Dkt. #132), and his motion to produce (Dkt. #146) are denied as moot.[3]

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       February 21, 2008.

---

[3]Plaintiff did file additional papers in opposition to defendants' motions after filing his motion for an extension of time, thus mooting the motion for an extension. *See* Dkt. #138. In addition, plaintiff's contention that he could not adequately respond to defendants' motions without further discovery has effectively been addressed by Magistrate Judge Payson's decision denying plaintiff's motion to compel discovery on the ground that plaintiff had failed to "explain how defendant's responses [to his discovery requests] were insufficient" or to "identify any additional documents to which he believes he is entitled." Dkt. #145 at 1. Although plaintiff did subsequently file a motion (Dkt. #146) seeking discovery from Dr. Reed, none of the materials sought (such as copies of her employment application and paychecks from ECMC) appear to have any relevance to the issues presented by defendants' summary judgment motions, and that motion is therefore denied as moot.